EXHIBIT 8

## DECLARATION OF ANDREW M. PARDIECK

### I.    BACKGROUND AND QUALIFICATIONS

1.    This declaration is based on my study and experience with Japanese law.[1]  As set out in my vitae, after completing my undergraduate degree at Harvard College, I graduated with a Juris Doctor (J.D.) degree from the Indiana University School of Law, Bloomington.  After admission to the Indiana Bar, I enrolled in the Hokkaido University School of Law in Japan and later graduated with a doctorate degree in law (*Hougaku Hakase* or Doctor of Juridical Science).

2.    As part of and following graduate school, I have researched and published works on Japanese law, in Japanese.  As set out in my vitae, law journals, including HANREI TAIMUZU, have accepted and published articles that I have written on Japanese law.  The Commercial Law Centre (SHOUJI HOUMU KENKYUUKAI) published a book that I wrote, in Japanese, comparing Japanese and American securities law.  The Legal Research Foundation of the Japan Federation of Bar Associations described this book as "a work that has practical value."[2]

3.    I have also written, in English, on various aspects of Japanese law, including contract law, consumer finance law, and securities law, and published that work in law journals located in the United States and Europe.[3]  I have given invited lectures on Japanese law in Japan, including for the Japan Federation of Bar Associations, Australia, and the United States.  I am not licensed as an attorney in Japan, but my education and experience has enabled me to, for over twenty (20) years, research, publish, and present on Japanese law.

4.    Apart from my work in academia, I have served as general counsel for Temple University, Japan Campus, in Tokyo.  A significant part of my responsibilities as general counsel involved researching Japanese law in order to ensure compliance on issues ranging from corporate registration requirements to labor law.

5.    I left this position to return to the United States and teach full time.  I am currently an Associate Professor of Law at the Southern Illinois University School of Law, in Carbondale, Illinois, where I teach litigation-related courses and a comparative law

---

[1] *See* Pardieck Curriculum Vitae, Ex. A.
[2] Nichibenren Hōmu Kenkyū Zaidan [Legal Research Foundation of the Japan Federation of Bar Associations], HŌMU SOKUHŌ [LEGAL AFFAIRS BULLETIN] (No. 2, June 30, 2001), available at https://www.jlf.or.jp/members/hanrei_mailmag/hanrei_data002.shtml.
[3] *See* Pardieck c.v., *supra* note 1.

course focusing on Japanese law.   I am also principal of Japan-America Consulting, LLC, and, in this capacity, research and consult on issues relating to Japanese law.

## II.      SUMMARY OF OPINIONS

6.  I have been asked by Plaintiffs' counsel to comment on the following topics:

   A.  the Civil Law tradition in Japan and the weight accorded judicial decisions there;
   B.  the accessibility and application of Japanese law in the United States;
   C.  the development of Japan's securities law and private rights of action for failure to disclose material information in securities filings;
   D.  the risk of a judicial decision in a civil case in the United States conflicting with a criminal case in Japan; and
   E.  the scope of class actions and use of mass actions in Japan.

7.   In preparing this declaration, I reviewed Plaintiffs' Amended Complaint and the law related to the Japanese law claims in the complaint.   I have also reviewed the Declaration of Mitsuhiro Yasuda filed in support of Nissan Motor Co., Ltd., Hiroto Saikawa, Hiroshi Karube, and Joseph G. Peter's Motion to Dismiss Complaint.

8.  In summary, my opinions are:

   A.  The Japanese legal system is part of the Civil law tradition.   As such, statutes and ordinances are the principal sources of law.   Judicial decisions may persuade but not bind.   In this case, the Financial Instruments and Exchange Act (FIEA) and related regulations guide the analysis.   Judicial decisions interpreting the FIEA are secondary in importance.

   B.  The Japanese legal system is well-developed.   Its legal standards are ascertainable from the United States using publicly accessible legal databases.   There is also a substantial body of scholarship in English addressing Japanese law, including the FIEA.

   C.  There is statutory authority, a significant number of judicial decisions, and scholarly literature in Japan addressing civil liability for misleading statements made in securities filings.   Japan's FIEA defines civil liability, pursuant to Article 21-2, for an issuer's misleading statements in annual securities reports.   The elements of an Article 21-2 claim are well-defined: plaintiffs must prove the issuer submitted a report containing (a) a false or misleading statement that is (b) material (collectively defined as a "false statement, etc."), and (c) plaintiff acquired or disposed of the security in a

2

secondary market due to the "false statement, etc." during the public inspection period for the relevant report.[4]  Defendant avoids liability by proving (1) the submitting person "did not intentionally or negligently" make the misleading statement.[5]  The act addresses causation: proof that the plaintiff did not inspect the report will not relieve the issuer from liability, but proof that plaintiff knew of the "false statement, etc." at the time of acquisition or disposal will.[6]  The act establishes a presumptive measure of damages that may be used by plaintiff,[7] and a means for the issuer to limit liability by proving that the decline in the value of the security, in whole or part, was due to circumstances other than the "false statement, etc."[8]

D.  Given Japan's Civil Law tradition, decisions by the Supreme Court may be *de facto* binding and the reasoning of the lower courts may be persuasive, but the doctrines of *stare decisis* and *res judicata* as defined by the Common Law are foreign to Japan.  A U.S. judicial decision in a civil suit will not directly affect claims made by other parties in Japan.  Where the claims are made in criminal proceedings, the different burdens of proof utilized in a civil suit in the United States and a criminal case in Japan will further limit any influence a U.S. judicial decision might have.  At most, a federal judicial decision here may be offered as a reference work there.

E.  Japan has a history of utilizing liberal joinder rules to aggregate plaintiffs, including those alleging securities fraud, into mass actions.  While a recent class action statute permits "specified qualified consumer organizations" to pursue claims on behalf of a class arising from defined consumer contracts, plaintiffs continue to apply the default joinder rules in the Code of Civil Procedure to pursue private rights of action, including those based on the FIEA.  Japanese scholars have classified the mass actions involving securities fraud claims as "quasi-class actions."

9.  Each point is discussed in additional detail below.

## III.  THE JAPANESE LEGAL SYSTEM AND FIEA CLAIMS

---

[4] Kinyuu Shouhin Torihiki Hou [Financial Instruments and Exchange Act ("FIEA")] Law No. 25 of 1948, art. 21-2(1).  *See also* HIROYUKI KANSAKU ET AL., JAPANESE FINANCIAL INSTRUMENTS AND EXCHANGE ACT 459 (2018).
[5] FIEA art. 21-2(2).
[6] FIEA art. 21-2(1).  *See also* KANSAKU ET AL., *supra* note 4, at 459.
[7] FIEA art. 21-2(3).
[8] FIEA art. 21-2(5).  *See also* KANSAKU ET AL., *supra* note 4, at 462-3.

## A. The Civil Law Tradition in Japan and the Weight Accorded its Judicial Decisions

10.  Japan has a long history of "legal pluralism."[9]  As early as the seventh and eighth century, it adopted, and adapted, significant portions of the Chinese legal system.[10]  During the Meiji Reformation, it adopted, and adapted, versions of the legal systems and Civil Law codes then found in France and Germany.[11]  Following World War II, U.S. law and U.S. advisors shaped Japan's post-war constitution, as well as revisions to some of its codes and special laws, including Japan's Securities and Exchange Act of 1948.[12]

11. While specific statutes such as the 1948 Securities and Exchange Act may be modeled on the U.S. law,[13] Japan's legal system remains firmly part of the Civil Law tradition.[14]

12. The Civil Law tradition is distinguished from the Common Law in its defined sources of law.  According to Civil Law scholars, "[a]ccepted theory of sources of law in the civil law tradition recognizes only statutes, regulations, and custom as sources of law."[15]  With the advent of constitutional courts, at the top of a modern hierarchy is the country's constitution, followed by codes and other legislation, executive decrees and regulations pursuant to grants of legislative authority, local ordinances, and custom.[16]

13. Japanese law scholars have described Japan's sources of law similarly.[17]  Japan's constitution is the "supreme law of the nation" followed by statutory laws enacted by the national Diet, then cabinet orders, then ministerial ordinances. [18]

14. Civil Law scholars describe "the common law doctrine of *stare decisis* – i.e., the power and obligation of the courts to base decisions on prior decisions" as "obviously inconsistent with the separation of powers as formulated in civil law countries…. Judicial

---

[9] MERRYLL DEAN, JAPANESE LEGAL SYSTEM 147 (1997).

[10] HIROSHI ODA, JAPANESE LAW 13 (3rd ed.  2009).

[11] *Id*. at 18-19.

[12] *Id*.

[13] Makoto Yazawa, *A Synopsis of Securities Regulation in Japan*, in JAPANESE SECURITIES REGULATION 24 (Louis Loss et al. eds. 1983).

[14] *See* ODA, *supra* note 10, at 13; PORT ET AL., COMPARATIVE LAW:  LAW AND THE PROCESS OF LAW IN JAPAN (3rd ed. 2015)("The modern Japanese legal system has many attributes of a classic Civil Law system.").

[15] JOHN H. MERRYMAN AND ROGELIO PEREZ-PERDOMO, THE CIVIL LAW TRADITION 24 (3rd ed. 2007).  *See also* Vivienne O'Connor, *Common Law and Civil Law Traditions* 11 (INPROL, March 2012), available at http://inprol.org/publications/11042/common-law-and-civil-law-traditions.

[16] O'Connor, *supra* note 15, at 11.

[17] Oda, *supra* note 10, at 26-52.

[18] *Id*. at 27.

4

decisions are not law."[19]  As a consequence, the "orthodox view" is that "no court is bound by the decision of any other court in a civil law jurisdiction."[20]

15. The Civil Law tradition is also distinguished from the Common Law in its legal reasoning.  "In the civil-law tradition, the reasoning process is deductive, proceeding from stated general principles or rules of law contained in the legal codes to a specific solution.  In common-law countries the process is the reverse—judges apply inductive reasoning, deriving general principles or rules of law from precedent…extracting an applicable rule, which is then applied to a particular case."[21]

16. Despite a Civil Law paradigm that envisions a judge applying rather than interpreting law,[22] there are judge-made legal norms interpreting the different codes and statutes.[23]  Judicial decisions are published and referenced by Civil Law courts.[24]

17. The scholarship on Japanese law suggests the same holds true for Japan.  "The Japanese legal system is primarily based on statutory laws.  However, this does not mean that case law is insignificant."[25]  According to one Japanese scholar, "the prevailing view is that court judgments are sources of law, but in a supplementary way.  This is because precedents are not binding on the courts in the same way as statutory laws are binding on them.  The doctrine of *stare decisis* has no explicit basis in Japanese law.  Therefore, the courts are theoretically free to render judgments against established precedent."[26]

18. Deviation from Supreme Court precedent, however, provides grounds for appeal[27] and, because of this possibility, lower courts usually follow Supreme Court precedent.  "This is often denoted as the *de facto* binding force of precedent."[28]

19. Lower court decisions may also offer examples of persuasive reasoning for other lower courts.  Practitioners may attach as reference works copies of judicial decisions to

---

[19] MERRYMAN AND PEREZ-PERDOMO, *supra* note 15, at 23.

[20] *Id*. at 46.

[21] James G. Apple and Robert P. Deyling, *A Primer on the Civil-Law System* 37, available at http://www.fjc.gov/public/pdf.nsf/lookup/CivilLaw.pdf/$file/CivilLaw.pdf.

[22] *Id*.

[23] *Id*.  The Federal Judicial Center's primer on the Civil Law states: "[i]n civil-law systems, the role and influence of judicial precedent, at least until more recent times, has been negligible."  *Id*. at 36.

[24] MERRYMAN AND PEREZ-PERDOMO, *supra* note 15, at 47.

[25] ODA, *supra* note 10, at 42.

[26] *Id*. at 43.

[27] The Code of Civil Procedure states that a lower court decision containing "a determination that is inconsistent with precedents rendered by the Supreme Court" serves as a basis for review by the Supreme Court of that lower court decision. Minji Soshou Hou [Code of Civil Procedure], No. 109 of 1996, at Art. 318(1), available at Japanese Law Translation, http://www.japaneselawtranslation.go.jp/law/detail/?ft=2&re=2&dn=1&yo=%E6%B0%91%E4%BA%8B%E8%A8 %B4%E8%A8%9F%E6%B3%95&x=0&y=0&ia=03&ky=&page=1.

[28] *Id*.

5

papers filed with the court, though some judges are reported to request counsel not submit such decisions.

20. The fact that Supreme Court decisions are not legally binding has, at times, enabled lower courts to reject and ultimately change Supreme Court doctrine. "Sometimes, the accumulation of lower court judgments against the Supreme Court's precedent has eventually led to a change of view by the latter."[29]

21. Japan's Constitution and statutes define the weight accorded its judicial decisions. Japan's Constitution provides that judges in Japan are "bound only by [the] Constitution and the laws of Japan."[30] It also provides that Japan's national legislature, the Diet, "shall be the sole law-making organ of the State."[31]

22. The statute organizing the courts in Japan addresses the power of the courts of appeal to bind lower courts. Article 4 provides simply that: "A conclusion in a judgment of a higher instance court shall bind the lower instance courts with respect to the case concerned."[32]

23. In summary, in reviewing Japanese law claims, the relevant statute and enforcement regulations are the principal sources of law. While Defendant's declaration raises concerns about the limited number of court rulings regarding FIEA Article 21-2, the judicial decisions are secondary in importance.

**B. The Accessibility and Application of Japanese Law in the United States**

24. Japan's Ministry of Justice maintains a database of English translations of Japanese law accessible via the internet.[33] All translations are "unofficial"; "[o]nly the original Japanese texts of the laws and regulations have legal effect."[34] However, these

---

[29] ODA, *supra* note 10, at 44. Judicial norms may also serve as a basis for legislative revisions to statutory law. Japanese law scholars have, for example, documented the influence of the courts on labor law and land and housing law. *See, e.g.,* Daniel H. Foote, *Judicial Creation of Norms in Japanese Labor Law: Activism in the Service of Stability?*, 43 UCLA L. REV. 635, 538 (1996); JOHN O. HALEY, THE SPIRIT OF JAPANESE LAW 124 (1998).

[30] Kenpou [Constitution], Art. 76(3).

[31] *Id*. at art. 41.

[32] Saibansho Hou [Court Act] No. 59 of 1947, art. 4, available at Japanese Law Translation, http://www.japaneselawtranslation.go.jp/law/detail/?ft=2&re=2&dn=1&yo=%E8%A3%81%E5%88%A4%E6%89%80&x=71&y=20&ia=03&ky=&page=2.

[33] Ministry of Justice, JAPANSE LAW TRANSLATION, available at http://www.japaneselawtranslation.go.jp/?re=2.

[34] *Id*.

translations are widely used and considered reliable.[35]  The translations go through a review process, and tentative translations are noted as such.[36]

25.  The Ministry of Justice has posted an approved translation of the FIEA, dated March 26, 2015.[37]  The statute has been revised since and is available in its current form,[38] in Japanese, in a database of laws and ordinances maintained by the Ministry of Internal Affairs and Communication, again accessible via the internet.[39]

26.  Japan's Supreme Court maintains a database of select judicial decisions from both the supreme and lower courts that is accessible via the internet.[40]  Commercial databases on Japanese law and legal literature are also available from LexisNexis JP, Westlaw, Japan, D-1 Law.com, TKC Law Library, Hanrei Hisho, and others.

27.  Courts in the United States routinely apply Japanese law obtained from such sources, even without an "official" translation.  They rely on translations found in scholarly writings,[41] and they rely on translations offered by experts.[42]  Courts have cited to, and relied on, the unofficial translations offered by the Ministry of Justice on its Japanese Law Translation website.[43]

28.  The U.S. Court of Appeals for the Seventh Circuit summarizes the law on this point.  Federal Rule of Civil Procedure 44.1 "permits foreign law to be proved by testimony or affidavits of experts, and that is the route followed in most cases.  But it also permits judges to consult other sources of foreign law such as articles, treatises, and judicial opinions."[44]  The court cautions against relying exclusively on expert testimony, but notes that experts can cite to scholarly literature as well, and "the parties can have the

---

[35] *See, e.g.,* Armour et al., *The Evolution of Hostile Takeover Regimes in Developed and Emerging Markets: An Analytical Approach*, 52 HARV. INT'L L. J. 219 (2011); Janis Sarra and Masafumi Nakahigashi, *Corporate Social Responsibility in the Pacific Rim:  Challenges for Corporate Social Responsibility in Japan*, 45 U.B.C. L. REV. 779 (2012); Mark A. Levin, *Successes, Failures, and Remaining Issues of the Justice System Reform in Japan*, 36 HASTINGS INT'L & COMP. L. REV. 475 (2013).

[36] Ministry of Justice, Japanese Law Translation, *supra* note 33.

[37] *Id.* at http://www.japaneselawtranslation.go.jp/law/detail/?ft=2&re=2&dn=1&yo=%E9%87%91%E8%9E%8D%E5%95%86%E5%93%81%E5%8F%96%E5%BC%95%E6%B3%95&x=36&y=7&ia=03&ky=&page=1.

[38] Ministry of Internal Affairs and Communications, *Hou De-ta Teikyou Shisutemu* [System to Provide Law Data], *available at* http://law.e-gov.go.jp/cgi-bin/idxsearch.cgi.

[39] ODA, *supra* note 10, at 27.

[40] Courts in Japan, Saibanrei Jouhou [Case Information], available at http://www.courts.go.jp/app/hanrei_jp/search1.

[41] *See, e.g., Akazawa v. Link New Technology International, Inc.*, 520 F.3. 1354, 1356 (Fed. Cir. 2008)(interpreting and applying Japanese Civil Code provisions relating to intestacy law).

[42] *See, e.g., Sunstar, Inc. v. Alberto-Culver Co.*, 586 3d 487 (7th Cir. 2009)(interpreting Japanese trademark law).

[43] *See, e.g., Nakajima v. Nakajima*, Intermediate Court of Appeals of Hawai'i, No. 29553, n. 13 (Oct. 30, 2014)(unpublished opinion citing the unofficial translation of the Companies Act).

[44] *Sunstar, Inc.*, 586 3d at 495.

relevant portions translated into English; judges can handle translations, which figure prominently in a variety of cases tried in American courts."[45]

29.     In summary, while Defendants' declaration raises concerns about a lack of official translations for the Japanese law and the disclosure documents in this case, there is ready access to the Japanese law and disclosure documents at issue here, which can be translated for use by the Court.

## C. The Development of Japan's Securities Law and Private Rights of Action for Failure to Disclose

30.     When Japan revised its securities law after World War II,[46] it combined the requirements found in the U.S. Securities Act of 1933 and Securities Exchange Act of 1934 into its 1948 Securities Exchange Act, and it established a Securities Exchange Commission, as an independent agency affiliated with the Ministry of Finance, to oversee the securities markets.[47]  In doing so, it instituted a system of required disclosures for publicly traded companies similar to that found in the United States. [48]

31.     In 2006, Japan significantly revised this statute, expanding its regulatory scope beyond securities, and renaming it the Financial Instruments Exchange Act (FIEA).[49]  Pursuant to Article 1, the act seeks to "ensure fairness in…the issuance of Securities and transactions of Financial Instruments…as well as to achieve fair price formation."[50]  The stated goal is to contribute to both "the sound development of the national economy and the protection of investors."[51]

### i.     Article 21-2 and Private Rights of Action

32.     As part of the 2006 revisions to the FIEA, Japan adopted Article 21-2, which imposes civil liability on issuers of publicly traded securities for false or misleading statements made in specified disclosure documents. [52]

33.     Prior to 2006, Japan's securities statute provided for civil liability for misrepresentations by companies and their officers in disclosure documents associated

---

[45] *Id.* at 496.

[46] *See* Yazawa, *supra* note 13, at 24; Satoshi Nakamura, *Kinyuu Shouhin Torihiki Hou Gairon* [An Outline of the Financial Instruments and Exchange Act], BUSINESS ISSUES, available at LexisNexis JP.

[47] *See* Yazawa, *supra* note 13, at 24.

[48] Nihon Hourei Sakuin [Index of Japanese Laws and Ordinances], available at http://hourei.ndl.go.jp/SearchSys/.

[49] Financial Services Agency [Kinyuucho], *Kinyuu Shouhin Torihiki Hou Ni Tsuite* [About the Financial Instruments and Exchange Act], http://www.fsa.go.jp/policy/kinyusyohin/.

[50] FIEA art. 1.

[51] *Id.*

[52] *See, e.g.,* Financial Services Agency [Kinyuucho], *Jimukyoku Setsumei Shiryou—Kyogi Kaiji Shourui ni Kakaru Songai Baisho Sekinin* [Secretariat Explanatory Materials—Damages Liability for False Disclosure Documents 3 (November 20, 2013)], available at http://www.fsa.go.jp/singi/singi_kinyu/risk_money/siryou/20131121/02.pdf.

with public offerings and distributions in the primary market, but it was silent regarding civil liability for representations that affected trading in the secondary markets.[53] Investors in the secondary markets relied, instead, on tort law found in Japan's Civil Code.[54]

34.     According to Japan's Financial Services Agency, this placed a heavy burden of proof on investors, which the 2006 amendments sought to lighten.  The Agency explained that the 2006 amendments, including Article 21-2, were intended to strengthen investors' ability to pursue liability through civil lawsuits, deter wrongful acts, and further the fairness and transparency of the securities markets.[55]

35.     Article 21-2 provides a framework for determining civil liability for companies making misleading statements in filed disclosures for securities traded in the secondary markets.

36.     Article 21-2 imposes civil liability on an issuer for a disclosure that contains a "false statement" about a material fact; "omits" a required material fact; or "omits a statement of material fact that is necessary to prevent it from being misleading."  The FIEA defines this collectively, including both the misleading statement and materiality element as a "False Statement, etc."[56]

37.     A defendant may avoid liability if it proves the submitting person "did not intentionally or negligently" make the misleading statement.[57]

38.     Defendant's proof that the plaintiff did not inspect the securities report, i.e. did not rely on the "false statement, etc.", does not relieve defendant from liability.  But proof that the plaintiff knew of the "false statement, etc." at the time of acquisition or disposal does.[58]

39.     The FIEA establishes a presumptive measure of damages that may be used by plaintiffs who purchased the security during the one (1) year period prior to disclosure of sufficient facts to make clear the falsity or misleading nature of the earlier representation.[59]  Article 21-2 further defines damages incorporating by reference the

---

[53] *Id*. at 3.

[54] *Id*.

[55] *Id*.

[56] FIEA art.21-2(1)

[57] FIEA art. 21-2(2).  The 2014 amendments to the FIEA eliminated strict liability for false or misleading disclosures.  *See* Financial Services Agency, *Kinyuu Shouhin Torihiki Hou to no Ichibu wo Kaisei Suru Houritsu Ni Kakawaru Setsumei Shiryou* [Explanatory Materials Regarding the (2014 Law No.44) Revisions to a Portion of Financial Exchange and Instruments Act], available at http://www.fsa.go.jp/common/diet/186/01/setsumei.pdf.

[58] FIEA art. 21-2(1).  *See also* KANSAKU ET AL., *supra* note 4, at 459.

[59] FIEA art.21-2(3).  Sup. Ct., March 13, 2012, 1369 HANREI TAIMUZU 128 (2012)(the "Livedoor Case").

definition found in Article 19.[60]  A 2018 treatise authored by Japanese securities law scholars and practitioners, written in English, concisely describes this methodology.[61]

40.     The FIEA also provides a framework for the issuer to disprove causation between the presumed damages and the false statement allowing for a reduction or disallowance of damages.[62]  Article 21-2 also provides the court with discretion to determine reasonable damages where proof of loss not casually related to the false statement is difficult.[63]  The 2018 treatise referenced above, again, explains this framework.[64]

41.     Article 21-3 of the FIEA provides a defined period of prescription, similar to a statute of repose, of five (5) years from the disclosure of the documents.  In addition, it provides a two (2) year statute of limitations, starting from the time the investor comes to know, or in the exercise of reasonable care should have come to know, that the disclosure documents contained false or misleading statements.[65]

42.     As discussed above, "[p]arliamentary legislation is the principal source of law in civil law countries,"[66] and, as a result, the FIEA controls the analysis.  At the same time, courts apply the law and, in doing so, interpret legal norms.  Japanese courts have done so on numerous occasions in resolving claims arising under the FIEA.

43.     According to a report authored by a Japanese securities law scholar for the non-profit Japanese Securities Research Institute, as of February 1, 2017, there were fifty-eight (58) published judicial decisions addressing an issuer's liability for misrepresentations in its disclosures.[67]

---

[60] FIEA art. 21-2(1).  Article 19 states that liability is calculated by deducting from the amount the claimant paid for the securities the market value of the securities at the time the claimant claims damages, or the disposal value of the securities if disposed of before the time of the claim.  *Id*. at art. 19(1)(i)(ii).  Article 19(2) then deducts amounts proven by the defendant as "due to circumstances other than the decline in the value of the securities" arising from the false or misleading disclosure.  *Id*. at art. 19(2).

[61] *See also* KANSAKU ET AL., *supra* note 4, at 461.

[62] *Id*. at art. 21-2(5).

[63] *Id*. at art. 21-2(6).

[64] KANSAKU ET AL., *supra* note 4, at 461-4.

[65] FIEA art. 21-3.  In 2014, Japan amended Article 21-2 to allow not only investors who had purchased but also those who had disposed of securities during the period in which the false or misleading disclosures where available for review to sue for damages under the FIEA.  *See* Financial Services Agency, *Kinyuu Shouhin Torihiki Hou to no Ichibu wo Kaisei Suru Houritsu Ni Kakawaru Setsumei Shiryou*, *supra* note 57.

[66] O'Connor, *supra* note 15, at 11.

[67] Japan Securities Research Institute, FIEA Research Group, *Ryuutsuu Shijou no Toushika ni yoru Hakkou Kaisha ni Taisuru Shouken Soshou no Jittai* [Actual Conditions for Securities Litigation Against Issuers by Investors in the Secondary Markets] Chart 1 (Feb. 1., 2017), available at http://www.jsri.or.jp/publish/record/pdf/060.pdf

44. Research for this declaration showed forty-eight (48) judicial decisions specifically addressing Article 21-2 liability for securities sold in the secondary markets, including five (5) decisions by Japan's Supreme Court.[68]

45. These decisions include cases with facts similar to those presented here. For example, Japanese courts have resolved civil lawsuits by investors, filed pursuant to Article 21-2, relating to the $1.7 billion Olympus accounting scandal. They have, pursuant to Article 21-2, determined relevant disclosure dates and calculated damages arising from misleading statements made in filed disclosure documents.[69]

46. Cases brought both prior to and after the 2006 amendments establishing a cause of action under Article 21-2 also commonly allege violations of Japan's negligence statute.[70] There are, as a result, additional judicial decisions addressing issues of materiality, causation, and damages in the context of claims made pursuant to Japan's Civil Code. These decisions include another Supreme Court decision that remains influential.[71]

47. There is also a substantial and growing body of scholarship related to the application of the FIEA. Apart from the 2018 English language treatise discussed above, there are numerous Japanese language works, by well-known scholars, addressing civil liability under the FIEA.[72] Issues relating to the FIEA are also addressed, in detail, in numerous law journal articles and reports.[73]

---

[68] *See* Ex. B. The Supreme Court decisions include: Sup. Ct., March 13, 2012, 1369 HANREI TAIMUZU 128 (2012)(the "Livedoor Case"); Sup. Ct., December 21, 2012, 1386 HANREI TAIMUZU 169 (2012)(the "Urban Corporation Case"); Sup. Ct., March 26, 2013, remanded to the Tokyo High Court, March 26, 2014, (the "NIWS Company case"); Sup. Ct. Oct. 11, 2018, 1456 HANREI TAIMUZU 63 (2018)(the "IHI" case); and Sup. Ct., Aug. 23, 2018, Case (o) No. 164, Case (ju) NO. 204 (the "Celartem Tech Case").

[69] *See, e.g.,* Tokyo Dist. Ct., March 19, 2015, 1479 KINYUU SHOUJI HANREI 48 (December 1, 2015); Osaka High Ct., Heisei June 29, 2016, Heisei 27 (Ne) No. 2577, 1499 Kinyuu/Shouji Hanrei 20.

[70] *See, e.g.,* Tokyo Dist. Ct., March 19, 2015, 1479 KINYUU SHOUJI HANREI 48 (December 1, 2015); Osaka High Ct., June 29, 2016, Heisei 27 (Ne) No. 2577, 1499 Kinyuu/Shouji Hanrei 20.

[71] Sup. Ct., September 13, 2011, 1361 HANREI TAIMUZU 103 (2011)("the Seibu Railway case").

[72] *See, e.g.,* ETSURO KURONUMA, KINYUU SHOUHIN TORIHIKI HOU [THE FINANCIAL INSTRUMENTS AND EXCHANGE ACT] (2016); Tomonobu Yamashita & Hideki Kanda, KINNYUU SHOUHIN TORIHIKI HOU GAISETSU [AN OVERVIEW OF THE FINANCIAL INSTRUMENTS AND EXCHANGE ACT' (2017); HIDEKI KANDA ET AL., KINYUU SHOUHIN TORIHIKI HOU konmenta-ru [A COMMENTARY ON THE FINANCIAL INSTRUMENTS AND EXCHANGE ACT ](2018); Naohiko Matsuo, KINYUU SHOUHIN TORIHIKI HOU [THE FINANCIAL INSTRUMENTS AND EXCHANGE ACT ](5th ed. 2018); TAKEO SAKURAI ET AL., SHIN KINYUU SHOUHIN TORIHIKI HOU HANDOBUKKU [A HANDBOOK FOR THE NEW FINANCIAL INSTRUMENTS AND EXCHANGE ACT](4th ed. 2018).

[73] *See, e.g.,* Nihon Shouken Keizai Kenkyuujo Kinyuu Shouhin Torihikihou Kenkyuukai, *Shouken Soshou wo Meguru Kinji no Sho Mondai* [*Recent Issues Relating to Securities Lawsuits*] (Nihon Shouken Keizai Kenkyuujo 2015); Hideki Kanda, *Heisei 26 Nen KinShouHou Kannren Housei no Minaoshi* [*The 2014 Legal Revisions to the Financial Instruments and Exchange Act*], 1473 JURISTO 29 (2014); Akira Morita, *Shouken Sagi no Minji Sekinin—Nichibei wo Hikaku* [*Civil Liability for Securities Fraud--A Comparison of Japanese and U.S. Law*], 2012 KINYUU SHOUHIN TORIHIKI HOU KENNKYUUKAI 1-12. Mitsuo Kondo, *Kinji no Saibannrei Kara Mita Minji Sekinin no Kadaoi to Tenbou* [*Civil Liability Issues and Perspectives from the Vantage Point of Recent Judicial Decisions*], 1444 JURISTO 34 (2012).

48.     This scholarship has increased relevance in a Civil Law country.   As set out in the Federal Judicial Center's primer on the Civil Law, "[t]hough legal scholarship is not a formal source of law, the 'doctrine' as developed by scholars is highly valued in the civil-law tradition."[74]

49.     Legal scholarship in Japan has similarly been afforded significant weight.[75] "The courts often accept the view of law professors…. Judges study scholarly opinions extensively before making a decision."[76]

### ii.     FIEA Issues

50.     With regard to internal control reports, the scholarship makes clear: "in cases where there are false statements, etc. in internal control reports…the person who submitted such documents shall bear…liability."[77]   The same holds true for directors: "where there are false statements, etc. in internal control reports…the issuer's "directors" shall bear that same liability for damages."[78]   Judicial decisions further define officer and director liability for failure to implement internal controls as required by the FIEA.[79]

51.     With regard to plaintiff-investors holding shares in street name, following amendments to the Act Concerning Transfer of Bonds, etc. effective 2009, all shares sold on Japanese stock exchanges are held in street name.[80]   The transfer act specifically contemplates that individual shareholders retain the ability to exercise their rights as shareholders by authorizing requests to brokerages to confirm shareholder status.[81] Japanese scholarship defines those possessing a private right of action seeking damages, pursuant to Article 21-2, as those who have acquired or disposed of the security, without regard to whether they hold or held the security in street name.[82]

---

[74] Federal Judicial Center, Civil-Law Primer, *supra* note 21, at 29.

[75] ODA, *supra* note 10, at 52.

[76] *Id*.

[77] KANSAKU ET AL., *supra* note 4, at 465.

[78] *Id*. FIEA art. 24-4-6 states: "The provisions of Article 22 apply mutatis mutandis if an Internal Control Report (including any accompanying document) contains a false statement about a material particular, omits a statement as to a material particular that is required to be stated, or omits a statement of material fact that is necessary to prevent it from being misleading…."

[79] Sup. Ct., July 9, 2009,  Heisiei 20 (uke) No. 1602, 2055 HANREI JIHOU (No.147); Tokyo High Ct., May 21, 2008, 1281 HANREI TAIMUZU 274; Tokyo Dist. Ct., Mar. 29, 2018, 422 SHIRYOUBAN SHOUJI HOUMU 23, Tokyo Dist. Ct., Apr. 23, 2015, 1478 KINHAN 37; Tokyo Dist. Ct. Sept. 25, 2017, 369 SHIRYOUBAN SHOUJI HOUMU 72; Tokyo Dist Ct., May 21, 2008,, 1281 HANREI TAIMUZU  274; Osaka Dist. Ct., Sept. 20, 2012, Heisei 7 (wa) No. 11994, Heisei 8 (wa) 4676, Heisei 9 (wa) No. 1939, Heisei 10 (wa) No. 8677, Heisei 10 (wa) No. 9278, 1047 HANREI TAIMUZU 86.

[80] *See* ITO ET AL., KAISHA HOU [THE COMPANIES ACT]112- 115(4th ed. 2018).

[81] *See, e.g.,* KENJIRO EGASHIRA, KABUSHIKI KAISHA HOU [THE LAW OF CORPORATIONS] 173-176, 191-202 (7th ed., 2017).

[82] ETSURO KURONUMA, KINYUU SHOUHIN TORIHIKI HOU [THE FINANCIAL INSTRUMENTS ACT] 223 (2016).

12

52.     With regard to imputed liability, the FIEA uses the term "Officers, etc." to define those directly liable for misrepresentations in securities filings.[83]  Well established principles of tort law further define the extent to which a company may be liable for the actions of their employees for wrongdoing, including the filing of misleading statements in disclosure documents.[84]

53.     Finally, with regard to disclosure of executive income, there are no judicial decisions interpreting the 2010 amendments requiring individualized disclosures for executives receiving remuneration in excess of ¥100 million.  There is, however, substantial administrative guidance.

54.     Japanese ministries or agencies responsible for drafting legislation or regulations routinely publish drafts for public comment and then respond to questions and comments.[85]  Litigants and the courts, in turn, rely on this administrative guidance as persuasive evidence of how the statute or regulation should be interpreted.[86]

55.     The Financial Services Agency has published a summary of the comments received regarding the 2010 amendments to the FIEA and its responses.[87]  This document includes a separate section regarding disclosure of executive compensation in excess of ¥100 million.[88]

56.     The Agency discusses this rule at length, analyzing fifty-four (54) separate comments.  For example, in Response No. 69, the Financial Services Agency states its opinion that high levels of director compensation are a material factor for investors.[89]  In Response No. 83, the Agency confirms that the dispositive language defining executive compensation in the new regulation is the same as that used previously with the Companies Act.[90]

57.     "Remuneration, etc." is defined in the Companies Act to include "remuneration, bonuses, and other consideration (collectively "Remuneration, etc.").[91]

---

[83] *See* FIEA art. 24-4; Companies Act art. 423.
[84] *See* Civil Code arts. 709 and 715; Companies Act art. 429.
[85] Attorney Yasuda relies on a Q&A document draft by the Consumer Affairs Agency interpreting the consumer contract class action statute.  *See* Declaration of Mitsuhiro Yasuda in Support of Nissan Motor Co. Ltd., Hiroto Saikawa, Hiroshi Karube and Joseph G. Peter's Motion to Dismiss Complaint, at p. 10, n. 9.
[86] See, e.g., Tokyo High Ct, Jan. 25, 2007, Heisei 18 Nen (Ne) No. 4877, 1805 Kɪɴɴʏᴜᴜ Hᴏᴜᴍᴜ Jɪᴊᴏᴜ No. 48; Tokyo Dist. Ct., May 14, 2015, Heisei 26 (wa) No. 3964; Tokyo Dist. Ct., Mar. 14, 2014, Heisei 23 (wa) No. 21758, 2254 Hᴀɴʀᴇɪ Jɪʜᴏᴜ 63.
[87] Kinyuuchou, *Kommento no Gaiyou Oyobi Kommento ni Taisuru Kinyuuchou no Kangaekata* [*An Outline of Comments and the Financial Supervisory Agency's Thinking Regarding those Comments*], (Mar. 31, 2010) available at https://www.fsa.go.jp/news/21/sonota/20100331-8/00.pdf.
[88] *Id*.
[89] *Id*. at 22.
[90] *Id*. at 28.
[91] Companies Act art. 361.

13

And the Companies Act Enforcement Rules requires disclosure of "Remuneration, etc." including "any director compensation which was paid or for which an estimate of the amount to be paid became certain during the fiscal year." [92]   In its comments, the Financial Services Agency emphasizes repeatedly that "*regardless of label*" economic benefits received by an executive as compensation are considered "Remuneration, etc." and subject to disclosure when paid or when an estimate of the amount to be paid becomes clear.[93]

58.     In summary, while Defendant's declaration discusses "a number of important issues of first impression," research shows a well-developed body of Japanese law addressing the issues in this case that a U.S. court may apply.

### D. The Impact of a Judicial Decision in a Civil Case in the United States on a Criminal Case in Japan

59.     Defendant's declaration raises concerns about an "actual risk of conflicting decisions" between the criminal case ongoing in Japan and this civil case in the United States.[94]  The different burdens of proof and the limited preclusive effect afforded civil judgments in Japan suggest that there is little risk of a judicial decision in a civil case in the United States conflicting with a criminal case in Japan.[95]

60.     Japan's Code of Civil Procedure defines the "scope of res judiciata" to include only that portion of the judicial opinion "included in the main text" of the judicial opinion.[96]  The "main text" of a judicial decision typically includes only the disposition of the case, *e.g.*, defendant is ordered to pay plaintiff prescribed damages with interest or plaintiff's claim is dismissed.

61.     The Code further states that a final judgment "shall be effective" only against the parties; another person for whom a party has served as a plaintiff or defendant; a successor in interest to the litigation; or a person who possesses the subject matter of the claim on behalf of one of the above persons.[97]

62.     Second, in Civil Law regimes including the Japanese legal system, there is a sharp delineation between application of public and private laws.  "Law is divided up

---

[92] Companies Act Enforcement Regulation art. 121.
[93] Kinyuuchou Kommento, *supra* note 83, at 84, 86, 89 and 107 (emphasis added).
[94] Yasuda Declaration, *supra* note 85, at 2.
[95] Research shows no civil lawsuits filed yet in Japan by Nissan investors relating to the misleading statements at issue in this case.
[96] Code of Civil Procedure, *supra* note 24, at art. 114(1).
[97] *Id*. at art. 115.

into clearly delimited fields. Public law and private law...are treated as inherently different and clearly distinguishable."[98]

63.     Finally, Japanese courts clearly distinguish between civil and criminal cases by, *inter alia*, requiring different standards of proof. When a Japanese court applies FIEA Article 197 to determine whether a criminal penalty of up to ten (10) years imprisonment or a fine of up to ¥10 million should be imposed, it will require prosecutors offer "proof of such a degree that there is no room for reasonable doubt."[99]

64.     In contrast, in civil litigation, Japanese courts will recognize facts if they are proven to a "high degree of probability."[100] A "high degree of probability" does not require "scientific proof, which leaves no points in doubt."[101]

65.     In short, the limited precedential effect accorded judicial decisions in the Civil Law tradition, the limited preclusive effect accorded judicial decisions in civil litigation in Japan, and the different burdens of proof required in criminal as opposed to civil ligation in Japan, all suggest limited risk of a conflict arising from a judicial decision in civil litigation in the U.S. and a criminal prosecution in Japan involving the same defendants.

### E. The Scope of Class Actions and Use of Mass Actions in Japan

66.     Defendant's declaration suggests the Japanese law claims in this case were "never intended to be asserted in a Japanese class action."[102] At the same time, Japanese scholars describe Japanese courts resolving FIEA claims, similar to those in this case, in "quasi-class actions."[103]

67.     The Japanese courts have long used joinder procedures to try fraud, labor law, products liability, and environmental claims involving large numbers of plaintiffs.[104]

68.     English language sources describe these actions as "collective actions" based on Code of Civil Procedure Article 38,[105] and note that "collective action

---

[98] JOHN H. MERRYMAN, THE CIVIL LAW TRADITION 63, 68, 91 (1985).

[99] *See, e.g.,* Sup. Ct., Heisei 19 (a) No. 80, 1326 HANREI TAIMUZU 137

[100] *See, e.g.,* Sup. Ct., Heisei 8 (o) No. 2043, 997 HANREI TAIMUZU 159.

[101] *Id*.

[102] Yasuda Declaration, *supra* note 85, at 2.

[103] *Id*.

[104] Daisuke Oda and Aruto Kagami, *Class/collective actions in Japan: overview*, PRACTICAL LAW ON WESTLAW Sec. 1 (Aug. 1, 2015). Newspapers and corporations have reported mass actions in asbestos litigation and other environmental cases, government claims, and other areas. There are also reports of data breach litigation involving over 10,000 plaintiffs seeking damages resulting from disclosure of personally identified information. https://www.benesse.co.jp/customer/bcinfo/01.html.

[105] Article 38 states: "If rights or obligations that are the subject matter of litigation are common to two or more persons or are based on the same factual or statutory causes, these persons may sue or be sued as co-litigants. The same applies if rights or obligations that are the subject matter of litigation are of the same kind and based on the

mechanisms have played a significant role in settling disputes with hundreds or thousands of plaintiffs."[106]

69.     According to the Japanese Securities Research Institute report discussed earlier, the Livedoor securities fraud litigation involved 3,782 investors, seeking over ¥38.6 billion (approximately $360 million).[107]   The report indicates that plaintiffs, alleging damages arising from the filing of fraudulent securities reports, pursued five (5) actions, including those filed by institutional and large investors and those filed by smaller investors in what the report classified "quasi-class actions."[108]   According to the report, the largest "quasi-class action" involved 3,345 plaintiffs, the second 409, and the last 20.[109]

70.     In the Toshiba securities fraud litigation currently underway in Japan, plaintiffs seeking damages arising from the filing of fraudulent securities reports again include institutional and large investors filing separate actions, and "quasi-class actions" involving some 454 plaintiffs.[110]

71.     Investors have also pursued "quasi-class actions" in Japan seeking damages from the filing of fraudulent securities reports in the Seibu Railways litigation, the Olympus litigation, the 1H1 litigation, and the Urban Corporation litigation.[111]

72.     In contrast, formal class actions, as opposed to "quasi-class actions," are relatively new.  A 2013 statute now permits "specified qualified consumer organizations" (SQCOs) approved by the Prime Minister's Office, to seek relief, including injunctive relief, on behalf of a class of consumers "for claims arising from consumer contracts and certain categories of property damage." [112]   The act establishes a special bifurcated procedure, whereby an approved consumer organization first seeks to establish liability for breach of a consumer contract, followed by a separate procedure to determine damages.[113]

---

same kind of factual or statutory causes." available at
http://www.japaneselawtranslation.go.jp/law/detail/?ft=2&re=2&dn=1&yo=Civil+Procedure&x=0&y=0&ia=03&ph=&ky=&page=5.
[106] Oda and Kagami, *supra* note 103, at 1.
[107] Japan Securities Research Institute 2017 Report, *supra* note 67, at Chart 3.  *See also* Tokyo Dist. Ct., May 21, 2009, 1306 HANREI TAIMUZU 124 (Livedoor Litigation).
[108] Japan Securities Research Institute 2017 Report, *supra* note 67, at Chart 3.
[109] *Id.*; The Tokyo District Court decision dated May 21, 2009 collectively resolved the claims of 3,340 plaintiffs. *See* Tokyo Dist. Ct., May 21, 2009, Heisei 18 (wa) No. 11635, Heisei 18 (wa) N. 14512, Heisei 18 (wa) No. 11635, Heisei 18 (wa) No. 14512, Heisei 18 (wa) No. 19657, Heisei 18 (wa) No. 28790, Heisei 19  (wa) No. 12156, 1306 HANREI TAIMUZU 124.
[110] Japan Securities Research Institute 2017 Report, *supra* note 67, at Chart 3.
[111] *Id.*
[112] Oda and Kagami, *supra* note 103, at 1, citing the Act on Special Provisions of Civil Procedure for Collective Recovery of Property Damage of Consumers 2013 available at
http://www.japaneselawtranslation.go.jp/law/detail/?id=2727&vm=04&re=01.
[113] *Id.*

16

73.     Claims based on FIEA Article 21-2 are outside the limited scope of the new statute.  The Consumer Affairs Agency, scholars, and practitioners agree that claims for damages arising from misrepresentations in annual securities reports are not subject to the new class action act, because such a claim does not arise from a contractual relationship between the consumer and the issuer.[114]  At the same time, the act is not intended to preclude investors from seeking relief under the FIEA.[115]

74.     In short, Japan has made a procedural choice to establish a class action-type procedure for certain consumer contract actions, but it continues to utilize the traditional joinder rules under the Code of Civil Procedure to resolve claims, including those based on Japan's securities law, filed by groups of plaintiffs in "quasi-class actions."

## IV.     CONCLUSION

75.     In conclusion, the Japanese legal system is well-developed, and its legal standards readily ascertainable from the United States.  Japan's securities law, now titled the Financial Instruments Exchange Act, was modeled on the U.S. Securities Act of 1933 and the Securities Exchange Act of 1934 and utilizes a disclosure regime similar to that found in the United States.  The FIEA requirements for imposing civil liability on issuers and directors for misleading statements in filed securities reports are different.  But the elements of the action and burdens of proof are readily ascertainable, and they are commonly applied in Japan to resolve "quasi-class actions" alleging securities fraud.

Signed and attested to subject to the penalties of perjury this 4th day of October 2019.


Andrew M. Pardieck, J.D., S.J.D.

---

[114] Hiroyasu Nakata, *Shōhisha Saiban Tetsuzuki Tokurei-hō no Kyōtsū Gimu Kakunin no Uttae no Taishō* [*Addressing Lawsuits Related to Common Duties Under the Special Provisions for Civil Court Procedures for Consumer Lawsuits*], available at
https://www.zenginkyo.or.jp/fileadmin/res/abstract/affiliate/kinpo/kinpo2014_2_7.pdf.

[115] "In laws such as the Financial Instruments and Exchange Act, the Financial Products Sales Act, the Insurance Business Act, and the Antimonopoly Act, with regard to tortious conduct, there are special rules regarding proof of negligence, presumption of damages and the like, and there are special rules by which employer liability may be established or confirmed."  Answer to Q21 in Q&As regarding Act on Special Provisions of Civil Court Procedures for Collective Recovery of Property Damage of Consumers published by the Consumer Affairs Agency, Government of Japan, available at
https://www.caa.go.jp/policies/policy/consumer_system/collective_litigation_system/about_system/act_on_special_measures/pdf/qa-all.pdf.

17

# EXHIBIT A

# ANDREW M. PARDIECK

Principal
Japan-America Consulting, L.L.C.
3742 E. Villa Glen Ct.
Bloomington, IN 47401
TEL: 812-498-4349
SKYPE: a.pardieck
EMAIL: andrew@japanamericaconsulting.com

Associate Professor of Law
Southern Illinois University School of Law
1150 Douglas Drive
Carbondale, Illinois 62901
TEL: 618-536-8325
EMAIL: apardieck@law.siu.edu

---

## Academic Background

**Hokkaido University School of Law** 法学博士
Ph.D. (S.J.D. equivalent); Japanese Ministry of Education Scholarship Recipient; Itoh Scholarship Foundation Recipient.

**Indiana University School of Law** J.D.
*Magna Cum Laude*; Order of the Coif; Dean's List: Admitted to the Indiana Bar.

**Harvard College** A.B.
*Magna Cum Laude*; Dean's List; Harvard College Scholarship Recipient.

## Work Experience

**Southern Illinois University School of Law** **Associate Professor of Law**
Teach Civil Procedure I & II, Remedies, eDiscovery, and Legal Globalization & Comparative Law. Research and write on Japanese law.

**Japan-America Consulting, LLC** **Principal**
Consult on Japanese regulatory, marketing, and legal issues.

**Temple University, Japan Campus** **General Counsel**
In-house counsel with responsibilities including negotiating and drafting contracts; compliance with Japanese and U.S. corporate, education, employment and immigration law; and risk management.

1

**Temple University Beasley School of Law**                    **Assistant Professor of Law**
Taught Introduction to Japanese Law, Comparative Corporate Law, Remedies, Torts at Temple University's Japan Campus.

**The Pardieck Law Firm**                                                 **Attorney**
Civil litigation practice focusing on products liability, with responsibility for pleadings; discovery, including electronic discovery; motion practice; and appeals.

**University of Washington School of Law**          **Visiting Scholar and Part-time Lecturer**
Taught Japanese Law and researched and wrote on the consumer finance industry in Japan.

**Indiana University School of Law**                     **Visiting Assistant Professor**
Taught Corporations and Securities Regulation and participated in research project commissioned by the Japanese Prime Minister's Office.

**Hokkaido University School of Law**                                    **Lecturer**
Taught Introduction to Japanese Law and Legal Research; assisted with Negotiations course; researched and published on U.S. and Japanese securities law.


# English Language Publications


**Books:**          Co-author, CONTRACT LAW IN JAPAN (Kluwer International Law International Encyclopaedia of Laws 2018).

**Articles:**       *Co-Author, Bargained Justice: A Comparative Analysis of Plea Bargaining in Japan, South Korea, and the United States* (forthcoming 2019);

Co-Author, *ADR in Japan's Financial Markets & The Rule of Law,* 10 NE. L REV. 400 (Spring 2018);

*Executing Contracts in Japan*, 40 ZEITSCHRIFT FÜR JAPANISCHES RECHT 183 [J. JAPANESE L.](2015);

*Layers of the Law:  A Look at the Role of Law in Japan Today,* 22 PAC. RIM L. & POLICY J. 599 (2013);

*Japan and the Moneylenders—Activist Courts and Substantive Justice,* 17 PAC. RIM L. & POLICY J. 529 (2008)(lead article);

*Kegs, Crude and Commodities Law: On Why it is Time to Re-examine the Suitability Doctrine under U.S. Commodities Law,* 7 NEVADA L. J. 301 (2007);

*The Formation and Transformation of Securities Law in Japan: From the Bubble to the Big Bang,* 19 UCLA PAC. BASIN L.J. 1 (2001) (lead article);

*Virtuous Ways and Beautiful Customs: The Role of Alternative Dispute Resolution in Japan,* 11 TEMPLE INT'L & COMP. L.J. 31 (1997).  Reprinted, in part, in INTERNATIONAL BUSINESS LAW (2d ed. 2005);

*Foreign Legal Consultants: The Changing Role of the Lawyer in a Global Economy,* 3 IND. J. GLOBAL LEGAL STUD. 457 (1996).

**Essays:**         *Common Expectations,* THE LAW TEACHER 34 (Spring 2014).

**Translations:**   *Kou v. Japan, 51 Saikō Saibansho Minji Hanreishu* (9) 3925 [1998] [SUPREME COURT REPORTER OF CIVIL CASES], published in THE JAPANESE ANNUAL OF INTERNATIONAL LAW, NO. 41 (1998).

**Editing:**        Deputy Editor of the ABA INTERNATIONAL  LAW YEAR IN REVIEW 2012.


# Japanese Language Publications


**Books:**          証券取引勧誘の法規制「開示義務」「説明義務」を超えて[REGULATING THE SOLICITATION OF SECURITIES TRANSACTIONS: BEYOND DISCLOSURE AND THE DUTY TO EXPLAIN] (Commercial Law Centre, Inc. 2001).  Reviewed by The Legal Research Foundation of the Japanese Federation of Japanese Bar Associations in HŌMU SOKUHŌ, June 20, 2001.

**Book Chapters:**  アメリカ製造物責任訴訟の現状と「管理される正義」[Products Liability Litigation in the United States & "Managed Justice"] in 『瀬川信久先生・吉田克己古稀記念論文集』[FESTSCHRIFT IN HONOR OF PROFESSORS NOBUHISA SEGAWA & KATSUMI YOSHIDA ](Seibundo 2018).

**Articles:**       アメリカ商品先物取引法の発展と法理 [The Development and Legal Principles of U.S. Commodities Futures Transaction Law], 24 SAKIMONO TORIHIKI HIGAI KENKYŪ 5 (2005);

変額保険に関する最高裁の二判決 [A Study of Two Supreme Court Opinions Concerning Variable Life Insurance], 990 HANREI TIMES 52 (1999).

**Essays:**         似ている問題・似ている弁護士たち[Similar Problems and Similar Attorneys], 63 SHŌHISHA HŌ NYŪSU 133 (2005);

アメリカの訴訟社会―増幅されている誤解[American Litigiousness: Amplified Misunderstandings], 26 KOKUSAI SHŌJI HŌ RONSHŪ 566 (1998).

3

# **Invited Lectures**

Invited Presentation on Japanese law, "A Comparative Analysis of Plea Bargaining," University of Hawai'i School of Law Climate Change in Japan's Criminal Justice System Symposium, September 8, 2019.

Invited Presentation on Japanese law, "Arrested for What? A Look at Executive Compensation Disclosure in Japan," University of Hawai'i School of Law Climate Change in Japan's Criminal Justice System Symposium, September 8, 2019.

Invited Presentation on eDiscovery, "Going where the Evidence Is," Jackson County Bar Association, Carbondale, IL, January 17, 2019.

Invited Presentation on Japanese law, "Bargained Justice: A Comparative Analysis of Plea Bargaining," New Perspectives in Japanese Law Symposium, Harvard Law School, September 29, 2018.

Invited presentation on Civil Procedure, "Complex Litigation and Managed Justice," Central States Law School Association Annual Conference, Carbondale, IL, October 7, 2017.

Invited presentation on eDiscovery, "Best Practices in Bad Faith Litigation," Colorado Trial Lawyers Association, Denver, Colorado, October 14, 2016.

Invited presentation on Civil Procedure, "Cost-Shifting under the Federal Rules of Civil Procedure," Central States Law School Association Annual Conference, Grand Forks, ND, September 24, 2016.

Invited presentation on Civil Procedure, "The 2015 Amendments to the Federal Rules of Civil Procedure," Southern Illinois Inns of Court, February 18, 2016.

Invited presentation on Civil Procedure, "Cost-Shifting under the Federal Rules of Civil Procedure," Southeastern Association of Law Schools Conference, Boca Raton, FL, August 1, 2015.

Invited presentation on eDiscovery, "eDiscovery for Small and Medium-Sized Cases," Jackson & Williamson County Bar Associations Joint CLE Conference, Carbondale, IL, May 1, 2015.

Invited presentation on Civil Procedure, The Proposed Amendments to the Federal Rules of Civil Procedure & eDiscovery," Hokkaido University School of Law, Sapporo, Japan.  July 18, 2014.

Invited presentation on Japanese law, "Layers of the Law: Contracts & Legal Consciousness in

Japan," Contract Law Reform in Asia Symposium sponsored by the Centre for Asian and Pacific Law at the University of Sydney, Australia, December 6, 2013.

Invited presentation on Japanese law, "The Role of law in Japan," Festschrift Conference in Honor of Professor John O. Haley, University of Washington School of Law, Seattle. October 19, 2012.

Invited presentation on Securities Law, Regulation of Structured Products in the U.S., National Conference on Securities Remedies, Nagano, Japan. July 23, 2010.

Invited lecture on Civil Procedure, Class Actions in the U.S., sponsored by the Kyoto Bar Association, Kyoto, Japan. July 30, 2007.

Invited lecture on Securities Law, Fiduciary Duties in the U.S., National Conference on Securities Remedies, Osaka, Japan. July 27, 2007.

Invited lecture on Securities Law, Japanese Federation of Bar Associations, Tokyo, Japan. July 26, 2007.

Invited lecture on Civil Procedure, Communicating with Juries, Chiba Prosecutor's Office, Chiba-city, Japan. July 24, 2007.

Invited lecture on Securities Law, The Suitability Doctrine, Hokkaido University School of Law, Sapporo, Japan. June 30, 2006.

Invited lecture on Tort Law, Issues in U.S. Products Liability Law, Hokkaido University School of Law, Sapporo, Japan. November 19, 2004.

Invited lecture on Securities Law, Disclosure Requirements in the U.S., the Japanese Federation of Bar Associations, Tokyo, Japan. November 17, 2004.

Invited lecture on Securities Law, The Structure of U.S. Securities Law, Osaka Bar Association, Osaka, Japan. November 15, 2004.

Invited lecture on Tort Law, Issues in U.S. Products Liability Law, Osaka Bar Association, Osaka, Japan. November 15, 2004.

Invited lecture and panel discussant on Securities Law, National Conference on Securities Remedies, Tottori City, Japan. November 12-13, 2004.

Lecture on Securities Law, Disclosure Requirements under U.S. and Japanese Securities Law, Hokkaido University School of Law, Sapporo Japan. September 24, 1999.

Lecture on Securities Law, Disclosure Requirements under Japanese Law for Variable Life Insurance Policies, Hokkaido University School of Law, Sapporo, Japan. October 23, 1998.

# **Invited Research**

Principle Investigator. Japan Foundation Center for Global Partnership sponsored research on plea-bargaining in Japan, South Korea and the United States, 2016-2019.

Coordinated research on U.S. disclosure requirements in consumer contracts for the Comparative Law Center, Kyoto University, commissioned by the Prime Minister's Office, Japan. Spring, 2006.

Contributing Member, E-Discovery Curriculum Consortium, UF Law E-Discovery Project, Fredric G. Levin College of Law, University of Florida, 2016-2018.

# **Associations & Certifications**

American Bar Association; Indiana Bar Association; Southern Illinois Inns of Court; Central States Law School Association (President 2016-2017).

Member of the Association of Certified Electronic Discovery Specialists. Certified eDiscovery Specialist; Certified Catalyst Insight User; Certified Predict Specialist. 

# EXHIBIT B

**List of Japanese court cases addressing Article 21-2
of the Financial Instruments and Exchange Act**

September 19, 2019

| No. | Company name | Court & Date |
|---|---|---|
| 1 | Livedoor | Tokyo District Court judgment on June 13, 2008,1294 *Hanrei taimuzu* 119 |
| 2 | *Id.* | Tokyo High Court judgment on December 16, 2009, 1332 *Kin'yuu shoji hanrei* 7 |
| 3 | *Id.* | Supreme Court, 3rd Petty Bench, judgment on March 13, 2012, 1369 *Hanrei taimuzu* 128 |
| 4 | *Id.* | Tokyo District Court judgment on May 21,2009, 1306 *Hanrei taimuzu* 124 |
| 5 | *Id.* | Tokyo High Court judgment on November 30, 2011, 1389 *Kin'yu shoji hanrei* 36 |
| 6 | *Id.* | Tokyo District Court judgment on June 18, 2009, 1310 *Hanrei taimuzu* 198 |
| 7 | *Id.* | Tokyo District Court judgement on July 9, 2009, 1338 *Hanrei taimuzu* 156 |
| 8 | *LDM (subsidiary of Livedoor)* | Tokyo District Court judgment on July 23, 2009, case (wa) No.16444 (2006) |

| 9 | *Id.* | Tokyo District Court judgment on April 27, 2017, Case (wa) No. 13654 (2016) |
|---|---|---|
| 10 | *Id.* | Tokyo High Court judgment on September 27,2017, Case(ne) No.2521 |
| 11 | *Urban Corporation* | Tokyo District Court judgment on October 28, 2009, case (wa) No.13105 (2009), 1413 Kin'yuu shoji hanrei 38 |
| 12 | *Id.* | Tokyo High Court judgement on March 17, 2010, case (ne) No.5802 (2009), 1413 Kin'yuu shoji hanrei 38 |
| 13 | *Id.* | Supreme Court, 2nd Petty Bench, judgment on December 21, 2012, 1386 Hanrei taimuzu 169 |
| 14 | *Id.* | Tokyo District Court judgment on January 12, 2010, 1318 Hanrei taimuzu 214 |
| 15 | *Id.* | Tokyo High Court judgment on December 20, 2011 |
| 16 | *Id.* | Tokyo District Court judgment on January 13, 2010, case (wa) No.13108 (2009) |
| 17 | *Id.* | Tokyo High Court judgment on December. 24, 2010 |

| | | |
|---|---|---|
| 18 | *Id.* | Tokyo District Court judgment on March 9,2010 case (wa) No.14500 (2009), 1903 Kinyuu houmu jijou 102 |
| 19 | *Id.* | Tokyo High Court judgment on November 24, 2010, 1351 Hanrei taimuzu 217 |
| 20 | *Id.* | Tokyo District Court judgment on March 26, 2010, 1903 Kinyuu houmu jijou 102 |
| 21 | *Id.* | Tokyo High Court judgment on December 20, 2011 |
| 22 | *Id.* | Tokyo District Court judgment on January 26, 2011,case (wa) No.13107 (2009) |
| 23 | *Id.* | Tokyo High Court judgment on March 29, 2012, case (ne) No.1678 (2011) |
| 24 | *Id.* | Tokyo District Court judgment on February 7, 2011, 1353 Hanrei taimuzu 219 |
| 25 | *Id.* | Tokyo High Court judgment on June 16, 2011 |
| 26 | *Id.* | Tokyo District Court judgment on April11,2011, case (wa) No.14166 (2009), case (wa) No.34430 (2009), case (wa) No.34890 (2009) |

| 27 | *Id.* | Tokyo High Court judgment on June 7, 2012 |
|----|-------|---------------------------------------------|
| 28 | *Id.* | Tokyo District Court judgment on August 29, 2011, case (wa) No.13112 (2009) |
| 29 | *Id.* | Tokyo High Court judgment on June 21,2012 |
| 30 | *Id.* | Tokyo District Court judgment on March 30,2016, case (wa) No.25313 (2011), case (wa) No.12687 (2015), |
| 31 | *NIWS Co* | Tokyo District Court judgment on December 3, 2009, case (wa) No.30172 (2008) |
| 32 | *Id.* | Tokyo District Court judgment on June 25, 2010, 1349 Hanrei taimuzu 225 |
| 33 | *Id.* | Tokyo High Court judgment on April13, 2011, 1374 Kin'yu shoji hanrei30 |
| 34 | *Id.* | Supreme Court, 3rd Petty Bench, judgment on March 26, 2013 |
| 35 | *Id.* | Tokyo High Court judgment on March 26 2014, case (ne) No.2223 (2013) |

| 36 | *IHI* | Tokyo District Court judgment on November 27, 2014, case (wa) No.27292 (2008), case (wa) No.31456 (2008), case (wa) No.37903 (2008), case (wa) |
|---|---|---|
| 37 | *Id.* | Tokyo High Court judgment on February 23,2017, case (ne) No.1789 (2015), 72-5 Saikou saibansho minji hanreishu 712 |
| 38 | *Id.* | Supreme Court, 1st Petty Bench, judgment on October 11, 2018, 1456 Hanrei taimuzu 63,72-5 Saikou saibansho minji hanreishu 477 |
| 39 | *Olympus* | Tokyo District Court judgment on March 19, 2015, 1479 Kin'yuu shoji hanrei 48 |
| 40 | *Id.* | Osaka District Court judgment on July 21,2015,1476 kinyuu shoji hanrei 16 |
| 41 | *Id.* | Osaka High Court judgment on June 29,2016,1499 Kin'yuu shoji hanrei 20 |
| 42 | *Riso-kyoiku* | Tokyo District Court judgment on March 28,2017,2070 Kin'yuu houmu jijou 74 |
| 43 | *Id.* | Tokyo High Court judgment on September 25,2017,1530 Kin'yuu shoji hanrei  12 |
| 44 | *Celartem tech.* | Tokyo District Court judgment on February 24,2017,case (wa)No.4558(2014) |

| 45 | *Id.* | Tokyo High Court judgment on October 19,2017,case(ne)No.1636(2017) |
|----|-------|--------------------------------------------------------------------|
| 46 | *Id.* | Supreme Court, 1st Petty Bench, judgment on August 23,2018, Case (o)No.164(2018),case(ju)No.204 (2018) |
| 47 | *Produce* | Tokyo District Court judgment on July 19 2017, 2374 Hanrei Jihou 69 |
| 48 | *Id.* | Tokyo High Court judgment on March 19,2018,2374 Hanrei Jihou 56 |